Fred HERRINGTON, Plaintiff in Error,

v.

STATE of Oklahoma, Defendant in Error.

No. A–12825.

Court of Criminal Appeals of Oklahoma.

May 25, 1960.

Granville Scanland, Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

NIX, Judge.

Fred Herrington, hereinafter referred to as the defendant, was convicted in the Court of Common Pleas of Oklahoma County, State of Oklahoma, for the crime of aggravated assault. A jury found the defendant guilty, but was unable to agree upon the punishment. The trial judge sentenced defendant to serve one year in the county jail and to pay a fine of $100.

The defendant appeals to this court relying for reversal upon two assignments of error, the first of which contends the court committed error in giving an erroneous instruction; the second contention advances the argument that the verdict is contrary to the evidence.

The testimony reveals that the defendant and his wife were operating a children's nursery on the date in question, and had been for some time. On the evening of December 22, 1958, the prosecuting witness Eulala Arrow left her seven month old baby boy at said nursery to be kept until she returned. The mother proceeded to a beer tavern where she drank beer and remained until midnight. She then returned to the nursery in a cab and picked up her baby. She testified that after arriving home she noticed the baby's face was bruised and swollen. She returned to the nursery after the expiration of approximately an hour and made inquiry as to what happened to the baby. The defendant stated that when the mother picked up the baby she was in a drunken condition and upon her return was weaving, flailing her arms and threatened to sue him for everything he had. That he could smell alcohol. He denied that he had in any way harmed the baby. A police officer testified he investigated the matter and while at defendant's home, the defendant told him that during the evening the baby had cried out and he had gone to the baby's crib and flipped it with his fingers two or three times. The defendant denied using the word "flipped" and said the word was "flicked". He testified again that he "tickled" the baby in an effort to get it to take the bottle. Upon this set of facts in substance the defendant was charged with the crime of aggravated assault under Title 21 O.S.A. § 646, which is as follows:

"An assault and battery becomes aggravated when committed under any of the following circumstances:

"(1) When great bodily injury is inflicted upon the person assaulted;

"(2) When committed by a person of robust health or strength upon one who is aged or decrepit."

The doctor's testimony relative to the baby's injuries will not support a charge of aggravated assault and battery under the first portion of the above statute. The evidence does not show the injuries of a serious nature and could not possibly be interpreted as an infliction of great bodily injury. The doctor who examined the baby the next day following the alleged incident and described the injuries thusly:

"The child's face was swollen, bruised and discolored on both sides. The eyes were, I would say, almost closed, maybe not completely. There was a bruise extending back of the ear."

Upon being asked what treatment he performed the doctor stated he did not prescribe any treatment as heat would have been the only helpful thing and it was not practical on an infant. He admitted there were no broken places on the skin and no open wounds. That he assumed the discolorations were caused by a human hand. The doctor further testified that he again saw the baby in a day or two and testified as follows:

"He was quite restless and upset. The bruising was subsiding as you would ordinarily expect it to do, and outside of being quite restless and agitated and upset, I found nothing else."

The doctor further stated in his opinion it would cause no permanent disability.

█ It is obvious from the testimony that the injury consisted of a bruise, discoloration, and swelling which subsided in a couple of days resulting in no permanent injury. Such injury on a seven month old infant could have been caused by a simple assault or without great force and is not indicative of an aggravated assault and battery.

By reason of the limitation of the statutory definition, the court is forced to the conclusion that the evidence was insufficient to make out a case of "great bodily injury."

█ It is at once noticeable the trial court in defining the crime of aggravated assault overlooked the fact 21 O.S.1951 § 646 was amended by the legislature in the 1957 session. The phrase "serious bodily injury" was changed to "great bodily injury". The court gave instruction No. 6 stating the definition of an aggravated assault and battery "when a serious bodily injury is inflicted upon the person assaulted" or "when committed by a person of robust health or strength upon one who is aged or decrepit."

The court further instructed that:

"You are instructed that a "serious bodily injury" has been inflicted upon a person so as to render the assault an aggravated assault when the injury is such that would give rise to apprehension of danger to life, to health or limb."

Prior to the adoption of the amendment changing the word "serious" to "great" (Session laws 1957) the instruction would have been in conformity with previous decisions of this court. See Minnix v. State, Okl.Cr., 282 P.2d 772; McKee v. State, 93 Tex.Cr.R. 217, 246 S.W. 1035. However, this instruction was erroneous but in defendant's favor. In the case at bar there was no evidence that the injuries of the infant were such as could have reasonably given rise to apprehension of danger to life, health, or limb.

This court said in the Minnix case, supra [282 P.2d 777],

"But it is evident that there is a distinction between 'great bodily injury' and 'serious bodily injury.'"

Our statute as now worded was adopted from the state of Nebraska. The Nebraska court was called upon to define "great bodily injury" in the case of Hallett v. State, 109 Neb. 311, 190 N.W. 862, 863:

"The term 'great bodily injury,' as employed in the Criminal Code is not susceptible of a precise definition, but implies an injury of a graver and more serious character than an ordinary battery."

Regardless of the distinction drawn between the word "serious" and "great", the court does not feel the evidence as to injury sufficient to establish aggravated assault under either definition.

■ The defendant further complains that the trial judge erred in giving the following instruction:

"You are further instructed that the term 'decrepit' designates a person who is disabled, incapable, or incompetent, either from physical or mental weakness or defects, whether produced by age or other causes, to such an extent as to render the individual comparatively helpless in a personal conflict with one possessed of ordinary health and strength."

No doubt this instruction was the foundation of the jury's verdict finding defendant guilty of aggravated assault. The instruction is not applicable to the facts in the case at bar. The word "decrepit" was never intended to describe the incapability of an infant. Defendant's brief adequately recites the definition of decrepit as stated by Webster. Webster defines "decrepit" as "broken down with age, wasted and enfeebled by the infirmities of old age, feeble, worn out." The Latin origin is the word "crepose" meaning to rattle or crackle; stemming from the same origin is the English word "crepitate" denoting "cracking sounds". It is readily observed that these words are commonly associated with infirmities brought on by age and wear. Unquestionably, they are representatives and denote the legislative intent. It would require absurd reasoning to place an infant of 7 months in the same category by declaring their natural incapability by virtue of tender age as decrepit. The state recites numerous cases from Texas in support of the instruction in contending that age is no criterion in being decrepit. However, they are not persuasive to this Court because a review of the Texas statute (Vernon's Ann.Penal Code, Art. 1147) makes a definite distinction between an assault and battery upon a decrepit person and a child. The Texas statute designates nine means by which an assault and battery become aggravate. Title 15, Ch. 2, Art. 1147, Sec. 4 reads:

"4. When committed by a person of robust health or strength upon one who is aged or decrepit.

"5. When committed by an adult male upon the person of a female *or child,* or by an adult female upon the person of a *child.*"

It is obvious that the Texas legislators were fully aware that decrepit would not suffice to describe a child. Therefore, they extended their statute by making an assault and battery upon a child an aggravated assault. Our legislature has not so extended our statute and we are unable to do so by judicial legislation.

The instruction was not applicable and had no place in the case at bar.

■ The evidence was not sufficient to support a verdict of aggravated assault. The greatest crime supported by the testimony would be that of assault and battery. The judgment and sentence is, accordingly, modified to a sentence of 30 days in the county jail, and to pay a fine of $100, and, as thus modified the judgment is affirmed.

POWELL, P. J., and BRETT, J., concur.